[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14283
Non-Argument Calendar
_____

D.C. Docket No. 3:12-cv-00088-CAR

JONATHAN JEFFERY ANDERSON,

Plaintiff-Appellant,

versus

SHERIFF JOE CHAPMAN,
MAJOR WADE HARRIS,
DEBORAH ATKINSON,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(March 11, 2015)

Before TJOFLAT, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

## I.

Jonathan Jeffery Anderson brought this action for damages under 42 U.S.C. § 1983 against Joe Chapman, the Sheriff of Walton County, Georgia, Wade Harris, the Commander of the Walton County Detention Center (the "Jail"), and Deborah Atkinson, a Classification Officer at the Detention Center.[1]  During the time period relevant here, Anderson was a pretrial detainee at the Jail, awaiting trial for rape, child molestation, enticing a child for indecent exposure, sexual battery and false imprisonment.   Anderson had been placed in administrative segregation due to the serious nature of these charges.  Because the charges involved children, those operating the Jail were concerned for Anderson's safety; inmates charged with crimes against children are frequent targets of assault at the hands of other inmates.[2]

---

[1]  Anderson's complaint in this case also sought injunctive relief.  Since he was no longer incarcerated in the Walton County Jail and injunctive relief could not be granted, the court treated his complaint as seeking damages against the defendants in their individual capacities.

[2]  Anderson entered the Jail on July 9, 2010.  On July 14, 2010, he was placed in Cellblock 12, Room 24, in administrative segregation, for his safety and the safety and security of others.   Inmates in Cellblock 12 received one hour per day recreation outside their cell and were free to move about the dayroom area.  On April 27, 2011, Anderson was moved in Cellblock 12 from Room 24 to Room 27, and shared that cell with another inmate.  On June 21, 2011, to accommodate a new recreation schedule in Cellblock 12, Anderson was moved to Room 25, sharing the cell with still another inmate.  The new recreation schedule provided Anderson with four hours of recreation per day.  On June 22, 2011, at his request, Anderson was reassigned and placed in Room 27 in Cellblock 12.  Another reassignment occurred at Anderson's request on June 4, 2012; he was moved to Room 38 in Cellblock 3.  He said that if he continued to have recreation time with the group he was assigned to in Cellblock 12, he would be "jumped."

2

In the complaint he filed in the District Court, Anderson claimed that he had been placed in administrative segregation without a hearing, as required by the procedural component of the Due Process Clause of the Fourteenth Amendment.[3] He also claimed that once placed in administrative segregation, he was "punished" in violation of his rights under the substantive component of the Due Process Clause.[4] That punishment allegedly included derogatory comments, cold stares, threats of violence, loss of food and recreation time, and being forced to wear shackles and leg irons, unlike other pretrial detainees.

The defendants moved the District Court for summary judgment. The court referred the motion to a Magistrate Judge, who recommended that the District Court grant the motion. The Magistrate Judge, in his Report & Recommendation ("R & R"), found that the evidence in the record failed to demonstrate (1) that Anderson's confinement in administrative segregation was so atypical of ordinary jail life as to create a liberty interest that entitled him to a due process hearing

---

[3] On his confinement in the Jail, Anderson was initially placed on suicide watch in a padded cell. His complaint seeks relief for the five days he was confined there. On appeal, though, his brief does not take issue with the District Court's rejection of that part of his due process claim; hence, we do not address it.

[4] As a pretrial detainee, Anderson was not subject to punishment as if he were an inmate serving a sentence for a crime he had committed. His complaint alleged that the treatment he received constituted cruel and unusual punishment in violation of the Eighth Amendment. The Eighth Amendment (which is applicable to the States under the Fourteenth Amendment's Due Process Clause) is inapplicable to pretrial detainees. A pretrial detainee's remedy for treatment that constitutes cruel and unusual punishment is under the substantive component of the Due Process Clause. *Cottrell v. Caldwell,* 85 F.3d 1480, 1490 (11th Cir. 1996). We therefore assume that Anderson brought his "Eighth Amendment claim" under that component.

before being confined there, and (2) that the confinement constituted punishment. Anderson objected to Magistrate Judge's R & R. "In his Objection, [he] contend[ed] that the circumstances surrounding his confinement", *i.e.,* the pending criminal charges, were "irrelevant[,] as the only pertinent issue [was] whether his 'punitive confinement' violated due process." Doc. 31 at 2. The District Court overruled Anderson's objection, resolving the issue it presented in these words:

> [A]s discussed in the Recommendation, there is no evidence that the named Defendants placed Plaintiff in administrative segregation *for the purpose of punishment*, as is required for Plaintiff's due process claim to succeed on the merits.[5] The Court further agrees with the Magistrate Judge that Plaintiff's placement in administrative segregation was based on several legitimate considerations. Consequently, because the Court finds that the evidence supports only that Plaintiff's confinement was based on several legitimate considerations, there is no evidence that Plaintiff's confinement was punitive and thus that it violated due process.

*Id.* (emphasis in original). The District Court therefore granted the defendants summary judgment. Anderson now appeals. We affirm.[6]

---

[5] *See Kibwika v. Broward Cnty. Sheriff's Office*, 453 F. App'x 915, 919 (11th Cir. 2012) (per curiam) (holding that pretrial detainee cannot be punished, and "[t]o determine whether a restriction constitutes punishment, [the court] must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose").

[6] We review the District Court's granting of summary judgment *de novo*, taking the evidence in the light most favorable to Anderson and drawing all inferences in his favor. *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785 (11th Cir. 2005).

II.

Anderson challenges the District Court's rejection of his procedural due process claim. In his Objection to the Magistrate Judge's R & R, Anderson did not challenge the Magistrate Judge's findings and conclusions regarding that claim; thus, the District Court did not address it. Under the circumstances, Anderson may not challenge here the factual findings underpinning the District Court's rejection of his procedural due process claim. *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).[7] We do consider, though, the court's *sub silentio* legal conclusion that the claim is insufficient, reviewing it *de novo*. *Id.*

To make out a denial-of-procedural-due-process claim under 42 U.S.C. § 1983, a plaintiff must establish three elements: (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). A convicted inmate's confinement to administrative segregation for non-punitive reasons does not violate due process because such segregation is "ordinarily contemplated by a prison sentence." *Sandin v. Conner*, 515 U.S. 472, 480, 115 S. Ct. 2293, 2298, 132 L. Ed. 2d 418 (1995). We find no controlling precedent holding that the same is not true with respect to pretrial detainees as

---

[7] Under *Dupree,* Anderson could challenge the factual findings for plain error, 715 F.3d at 1300, but he has not done so.

5

well.  In short, confinement in administrative segregation under conditions substantially similar to those experienced by the general jail population does not implicate a liberty interest.  *Id.* at 485–86, 115 S. Ct. at 2301.  The evidence in this case is that Anderson's placement was similar to the placement of anyone facing charges such as Anderson's.  The placement was not for punishment; rather, it was done to ensure Anderson's safety and to minimize the risk of violence between inmates.

Even if we were to assume that Anderson was improperly denied a due process hearing antecedent to his placement, we must bear in mind that for any of the defendants to be held liable in damages, Anderson would have to prove that the defendant personally participated in the denial.  That is, individual liability under § 1983 cannot arise vicariously through a theory of respondeat superior.  *Monell v. Dep't. of Soc. Servs. of New York,* 436 U.S. 658, 690–95, 98 S. Ct. 2018, 2035–38, 56 L. Ed. 2d 611 (1978); *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1290 (11th Cir. 2004).  Without the liability-extending tool of respondeat superior, "[s]upervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates . . . ."  *Gray v. Bostic,* 458 F.3d 1295, 1308 (11th Cir. 2006).  The record contains no evidence indicating that either Sheriff Chapman or Commander Harris were personally involved in the placement at issue; in fact, there is no evidence that they even knew about it.  As for Officer Atkinson, who

classified Anderson for administrative segregation, there is no evidence that Anderson ever requested a hearing or, assuming he did, that Officer Atkinson denied it. Whatever requests he made were for new cell assignments, and, for the most part, they were granted.

Finally, as to all three defendants, Anderson cites no precedent, nor are we aware of any, that would have put them on notice that placing Anderson in administrative segregation without a hearing under the circumstances of this case would have denied him due process. Hence, they are entitled to qualified immunity.

We turn now to Anderson's substantive due process claim.

## III.

"Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners." *Cottrell v. Caldwell,* 85 F.3d 1480, 1490 (11th Cir. 1996). But the standards are the same, "so decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees." *Id.* "[T]he mistreatment standard is "'deliberate indifference' to a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 827, 114 S. Ct. 1970, 1974, 128 L. Ed. 2d 811 (1994). The standard has both an objective and a subjective component.

7

"To satisfy the objective component, the plaintiff must show a deprivation that is, 'objectively, sufficiently serious,' which means that the defendants' actions resulted 'in the denial of the minimal civilized measure of life's necessities.'" *Cottrell* , 85 F.3d at 1491 (quoting *Farmer*).  "Even when that objective component is established, an in-custody mistreatment claim fails unless the plaintiff establishes that the defendant had a 'sufficiently culpable state of mind.'" *Id.* (quoting *Farmer*).

As is the case with his procedural due process claim, Anderson had to establish that the defendant personally participated in the constitutional deprivation.  Nothing in the record establishes, for summary judgment purposes, the objective and subjective elements of the claim against any of the three defendants.  None were shown to be aware of, much less deliberately indifferent to, the conditions of confinement of which Anderson complains.  Nor is there any evidence that he was placed in administrative segregation for punishment as opposed to a legitimate governmental interest.  In short, the District Court properly granted summary judgment on this claim.

AFFIRMED.